IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Mosser Construction, Inc., | Case No. 3:08 CV 2363 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| The Travelers Indemnity Company, | |
| Defendant. | |

### INTRODUCTION

The issue in this case is whether a company who supplied crushed stone backfill to a general contractor is a "subcontractor" within the meaning of an insurance policy, or merely a "material supplier." Resolution of this question will determine whether the policy obligates Defendant Travelers Indemnity Company (Travelers) to defend and indemnify Plaintiff Mosser Construction, Inc. (Mosser) in an underlying lawsuit in state court. The parties stipulated to the material facts (Doc. No. 17) and filed Cross-Motions for Summary Judgment (Doc. Nos. 18-19). The matter has been fully briefed (Doc. Nos. 18-21), and the Court held a hearing on August 7, 2009.

### BACKGROUND FACTS

Mosser is a defendant in an underlying lawsuit in the Ottawa County (Ohio) Court of Common Pleas. That lawsuit arises out of a construction contract between Mosser and the City of Port Clinton (Port Clinton) for improvements to a wastewater treatment facility. Mosser was the general contractor for the project. Port Clinton sued Mosser for damages after the walls of the facility began to crack,

allegedly due to the failure of structural backfill beneath and around the foundation of the building. Gerken Materials, Inc. (Gerken) supplied the crushed limestone backfill under a purchase order from Mosser. Port Clinton alleges the backfill Gerken supplied was defective because it contained gypsum, which leached out of the material when exposed to groundwater, causing improper settling.

Travelers is Mosser's liability insurer. Mosser sought defense and indemnity from Travelers for Port Clinton's lawsuit. Travelers declined coverage, relying on an exclusion to coverage in the insurance policy. Generally, the policy covers "property damage," but there are a number of exclusions. One particular exclusion is at issue here, and the exclusion itself contains an exception:

This insurance does not apply to: . . .

**l.    Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it . . .
This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

The policy defines "your work" as:

(1)    Work or operations performed by you or on your behalf; and
(2)    Materials, parts or equipment furnished in connection with such work or operations.

Thus, the policy does not cover property damage arising out of Mosser's own work, but it does cover damage from work performed on Mosser's behalf by a subcontractor.

The parties' dispute is straightforward: Was Gerken a "subcontractor" within the meaning of the "your work" exclusion? Mosser argues that Gerken was a subcontractor, so the exception to the exclusion applies and Travelers is obligated to defend Mosser. Travelers disagrees, contending that Gerken was merely a material supplier, a class distinct from subcontractors, and that Travelers was therefore justified in declining coverage. The parties agree the policy does not define "subcontractor"

2

and this Court should therefore give the term its ordinary, commonly accepted meaning; however, they disagree about that ordinary meaning.

Some additional background on Mosser's agreements with Port Clinton and Gerken is relevant to this dispute. The Port Clinton construction contract required Mosser to, among other obligations, excavate, backfill, compact, and grade the site of the wastewater treatment facility. It also defined Mosser's "work" as including the "furnishing . . . of materials." The contract specifically required Mosser to furnish crushed stone structural backfill that met the specifications of the Ohio Department of Transportation (ODOT) and the American Association of State Highway and Transportation Officials (AASHTO).

Mosser submitted a purchase order to Gerken for several grades of crushed limestone, listed by ODOT specification number. These grades of stone were standard items Gerken sold; none was custom-made for Mosser. Gerken performed standard testing on the stone, as it does for all its products. Gerken did not deliver any of the stone to the Port Clinton project, and none of its employees were ever on site at the project. Gerken billed Mosser periodically as Mosser picked up the material. Gerken did not post a performance bond for the Port Clinton project.

## STANDARD OF REVIEW

Pursuant to Federal Civil Rule 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Id*. When considering a motion for summary judgment, a court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, a court determines only whether the case contains sufficient

evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

## DISCUSSION

An insurance policy is "a contract and like any other contract is to be given a reasonable construction in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed." *Dealers Dairy Prods. Co. v. Royal Ins. Co.*, 170 Ohio St. 336, 339 (1960). However, where provisions in a contract are reasonably susceptible of more than one meaning, they are strictly construed against the insurer. *King v. Nationwide Ins. Co.*, 35 Ohio St. 3d 208, 211 (1988). Specifically, "where exceptions . . . are introduced into an insurance contract, a general presumption arises to the effect that that which is not clearly excluded from the operation of such contract is included in the operation thereof." *Anderson v. Highland House Co.,* 93 Ohio St. 3d 547, 549 (2001) (*quoting Home Indem. Co. of New York v. Plymouth,* 146 Ohio St. 96 (1945)). In other words, "the insurer must establish not merely that the policy is capable of the construction it favors, but rather that such an interpretation is the only one that can be fairly placed on the language in question." *Id.* at 549 (citations omitted).

The onus is on Travelers to show that the only reasonable definition of "subcontractor" in its insurance policy does not include Gerken. Mosser argues Travelers cannot meet this burden because the ordinary meaning of subcontractors is expansive enough to encompass material suppliers like Gerken. Essentially, Mosser contends that all (or nearly all) material suppliers *are* subcontractors. Travelers, in contrast, points to a line of federal cases interpreting the Miller Act which distinguish between subcontractors and material suppliers. Mosser responds that courts' interpretation of a specific statute such as the Miller Act is irrelevant to determining the ordinary meaning of

4

"subcontractor," and that this Court should therefore disregard the Miller Act cases. Mosser favors the broad definition of subcontractor advanced by the Ohio Supreme Court in *J. T. Weybrecht's Sons Co. v. Hartford Acc. & Indem. Co.*, 161 Ohio St. 436, 443 (1954).

**The Miller Act Cases**

The Miller Act, 40 U.S.C. § 3131 (formerly 40 U.S.C. § 270), "requires a prime contractor of a federal project to furnish a payment bond to insure payment to individuals who supply labor and/or materials for federal projects." *U.S. for the Use and Benefit of Consol. Pipe & Supply Co. v. Morrison-Knudson Co.*, 687 F.2d 129, 131 (6th Cir. 1982). Payment bonds under the Miller Act protect those who have a contractual agreement with the prime contractor or with a subcontractor; the Act does not protect those supplying labor or material to a mere material supplier. *F.D. Rich Co., Inc. v. U.S. for the Use of Indust. Lumber Co., Inc.*, 417 U.S. 116, 122 (1974). In deciding who was protected, it became necessary for federal courts to develop tests to distinguish between subcontractors and material suppliers. *See, e.g.*, *U.S. for the Use and Benefit of Conveyer Rental & Sales Co. v. Aetna Cas. & Sur. Co.*, 981 F.2d 448, 451-52 (9th Cir. 1992) (summarizing factors courts have used to determine whether one is a subcontractor or material supplier under the Miller Act).

To be sure, the definitions of subcontractor and material supplier adopted by courts interpreting the Miller Act are not binding on parties to a private insurance contract. Nevertheless, they can be evidence of what the terms mean in practice. *See Simpson v. State Mut. Life Assurance Co. of Am.*, 382 A.2d 198, 200 (Vt. 1977) (noting that, in interpreting an insurance contract, statutory definitions are not binding but "can serve as another extrinsic source" to help determine a term's meaning).

Mosser argues that this Court should pay no attention to the Miller Act cases, because Congress' purpose in drafting the Miller Act -- and in drawing a distinction between subcontractors

5

and material suppliers -- was completely different than Travelers' and Mosser's intent in entering the insurance contract. Specifically, Mosser claims that Congress distinguished between subcontractors and material suppliers because it was concerned with limiting the access of remote claimants to a general contractor's payment bond. The "your work" exclusion in the insurance policy, in contrast, is designed to ensure that Travelers does not have to defend or indemnify Mosser for damages caused by its own defective workmanship. The subcontractor exception to the exclusion, contends Mosser, "clarifies that Mosser will be entitled to coverage for damages which occur as the result of another's defective work. Separating material suppliers from subcontractors . . . does nothing to further this purpose" (Doc. No. 20, p. 8).

The policy's definition of "your work" undermines Mosser's argument. According to the policy, "your work" includes "[m]aterials, parts or equipment furnished in connection with such work or operations." Because "your work" includes "materials . . . furnished in connection with such work," there *is* a sensible reason to distinguish mere material suppliers from subcontractors: under the exclusion, Mosser (not Travelers) assumes the risk that materials used as part of its own work might be defective. The exclusion does *not* apply if someone other than Mosser, such as a subcontractor, does the actual work. Thus, the insurance policy itself points to the need to distinguish between subcontractors and material suppliers.

Moreover, the touchstone of the subcontractor inquiry under the Miller Act is "the substantiality and importance of [the] relationship with the prime contractor." *Conveyer Rental*, 981 F.2d at 450-51 (citing *F.D. Rich*, 417 U.S. at 123). That test comports with the apparent purpose of the policy exclusion at issue here; determining whether a defect arises out of Mosser's own work or the work of a subcontractor will necessarily involve determining the "substantiality and importance"

6

of a particular actor's involvement in the construction project. In other words, the task for this Court is to determine whether Gerken's involvement in the project was "substantial and important" enough to warrant the label "subcontractor." The framework developed by courts interpreting the Miller Act is therefore a useful tool in determining whether the policy exclusion applies.

The Miller Act cases have identified a number of factors to determine whether one is a subcontractor or material supplier, helpfully summarized by the Ninth Circuit in *Conveyer Rental*, 981 F.2d at 451-52 (9th Cir. 1992). Factors indicating a subcontractor relationship are:

> (1) [T]he product supplied is custom fabricated; (2) the product supplied is a complex integrated system; (3) a close financial interrelationship exists between the companies; (4) a continuing relationship exists with the prime contractor as evidenced by the requirement of shop drawing approval by prime contractor or the requirement that the supplier's representative be on the job site; (5) the supplier is required to perform on site; (6) there is a contract for labor in addition to materials; (7) the term "subcontractor" is used in the agreement; (8) the materials supplied do not come from existing inventory; (9) the supplier's contract constitutes a substantial portion of the prime contract; (10) the supplier is required to furnish *all* the material of a particular type; (11) the supplier is required to post performance bond; (12) there is a backcharge for cost of correcting supplier's mistakes; and (13) there is a system of progressive or proportionate fee payment.

*Id.* (citations omitted).

In this case, none of the first twelve factors indicates that Gerken was a subcontractor: (1) Gerken's stone was not custom fabricated; (2) the stone was not a complex integrated system; (3) there was no close financial relationship between Gerken and Mosser; (4) there was no "continuing relationship" between Gerken and Mosser; (5) Gerken was not required to do any work at the job site; (6) Gerken had no contract to provide labor; (7) the purchase order for stone did not refer to Gerken as a "subcontractor"; (8) the stone came from Gerken's existing inventory; (9) Gerken's contract was only 0.5% of the prime contract -- not a "substantial portion"; (10) there was no specific requirement that Gerken furnish all stone backfill for the project (although Gerken may in fact have done so); (11)

7

Gerken was not required to post a performance bond; and (12) there was no backcharge system set up to correct any mistakes Gerken may have made. Factor thirteen -- progressive or proportionate fee payment -- might apply because Gerken billed Mosser for stone periodically, as delivered to the job site. However, progressive payments apply to percentage of work completed, not the sale of standard items that are invoiced when delivered.

In any event, one factor out of thirteen does not create a subcontractor relationship, particularly since Gerken *does* satisfy a number of factors indicating it was merely a material supplier. *Conveyer Rental* lists five such factors (some of which are merely the converse of the thirteen factors listed above):

> (1) [A] purchase order form is used by the parties; (2) the materials come from preexisting inventory; (3) the item supplied is relatively simple in nature; (4) the contract is a small percentage of the total construction cost; and (5) sales tax is included in the contract price.

*Id.* at 452.

Here, the record shows that (1) Mosser and Gerken used a purchase order form for the stone; (2) the stone came from existing inventory ("off the shelf"); (3) the crushed stone is stock material; and (4) the contract is only 0.5% of the total contract cost. The record is unclear as to whether Mosser paid sales tax on the stone. However, the industry standard for public-work projects, like this one, is for Mosser to supply a sales tax exemption certificate to Gerken. Sales tax therefore is irrelevant to distinguishing between a contractor and material supplier in this context.

Overall, there is no doubt that Gerken is a material supplier under the functional definitions of "subcontractor" and "material supplier" applied by the federal courts interpreting the Miller Act. Indeed, at oral argument, Mosser's counsel conceded that Gerken was a material supplier under the

8

Miller Act framework (TR 16). Because those definitions are relevant to the policy exclusion at issue, this Court finds that Gerken is unambiguously *not* a subcontractor.

**The *Weybrecht* Case**

Mosser offers an alternate definition of subcontractor, relying primarily on the Ohio Supreme Court's decision in *J.T. Weybrecht's Sons Co. v. Hartford Acc. & Indem. Co.*, which defines "subcontractor" broadly as "one who contracts with a contractor to perform part or all of the latter's contract." 161 Ohio St. 436, 443 (1954) (quoting *Webster's New International Dictionary* (2d. ed)). The *Weybrecht* court concluded that the "ordinary meaning" of "subcontractor" encompassed material suppliers for purposes of Ohio's performance bond statute. *Id.* at 444. Mosser argues that because Mosser's contract with Port Clinton required it to furnish backfill, and Mosser contracted with Gerken to furnish the backfill, Gerken is therefore a subcontractor -- just as the material supplier in *Weybrecht* was a subcontractor.

This Court does not find *Weybrecht* persuasive. The opinion itself evinces a telling lack of enthusiasm about its endorsement of such a broad definition of "subcontractor." The court strongly hinted that, in interpreting "subcontractor" in the performance bond statute (applicable to public construction), it was inclined to follow the related mechanic's lien statute (applicable to private construction), which had separate definitions for subcontractors and material suppliers. *Id.* at 439-440. However, the court chose not to follow the mechanic's lien statute, at least in part because "many performance bonds are now outstanding which were executed in reliance on the decision made in the *American Guaranty Co.* case," which had implicitly concluded that "materialman" fell within the meaning of "subcontractor" under the performance bond statute. *Id.* (citing *Am. Guar. Co. v. Cincinnati Iron & Steel Co.*, 115 Ohio St. 626 (1927)). The court noted the potential "retroactive

effect" of overruling *American Guaranty Co.* and stated: "We believe therefore that, if there is any reasonable basis for the decision rendered in the *American Guaranty Co.* case, this court should follow that decision and leave it to the General Assembly to effect any change in the law for the future." *Id.* at 440-441.

The Ohio General Assembly eventually accepted the *Weybrecht* court's invitation to change the performance bond statute and adopted separate definitions of "subcontractor" and "material supplier" in the performance bond statute. *See* R.C. § 153.54(J).[1] *Weybrecht* therefore has been statutorily overruled.

Mosser does not deny this, but argues the definitions adopted by the Ohio legislature are irrelevant to the current dispute. The *Weybrecht* court set forth the ordinary meaning of the word "subcontractor," argues Mosser, and that is precisely what this Court should use here, regardless of what the Ohio legislature has said on the matter. This argument assumes that the Ohio legislature did *not* have the ordinary meaning of "subcontractor" in mind when it drafted the statutes at issue -- that it arbitrarily carved out "material suppliers" from the broader set of "subcontractors" in order to advance a certain statutory scheme. This Court sees no evidence of that. Words in statutes are

---

[1]

R.C. § 153.54(J) adopts the definitions in Ohio's mechanic's lien statute, R.C. § 1311.25, which provides in pertinent part:

> (C) "Material supplier" includes any person by whom any materials are furnished in furtherance of a public improvement.
>
> * * *
>
> (E) "Subcontractor" includes any person who undertakes to construct, alter, erect, improve, repair, demolish, remove, dig, or drill any part of any public improvement under a contract with any person other than the public authority.

typically given their ordinary meaning. *See, e.g.*, *State ex rel. Mager v. State Teachers Retirement System of Ohio*, 2009 Ohio LEXIS 2666 at *6-7 (2009) ("Statutory construction must begin with the language employed by [the legislature] and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose") (quoting *Engine Mfrs. Assn. v. S. Coast Air Quality Mgt. Dist.,* 541 U.S. 246, 252 (2004)) (other citations omitted). Of course, legislatures are free to depart from ordinary meaning by giving words specific definitions, but there is no reason to believe that the Ohio legislature employed specialized, idiosyncratic definitions for "subcontractor" and "material supplier." To the contrary, the statutory definitions are based on a natural functional difference between the two groups: a subcontractor does actual work at a job site, and a material supplier furnishes materials.

Moreover, this Court does not find *Weybrecht's* broad definition of subcontractor to be of any practical use in determining whether Gerken was a subcontractor for purposes of the policy exclusion. Under Mosser's application of *Weybrecht*, when the underlying contract requires the general contractor to furnish all necessary materials (as is the case with the Port Clinton-Mosser contract), anyone supplying materials to the general contractor automatically becomes a subcontractor. But this definition would seem to include even a corner hardware store that provided the contractor with paintbrushes or nails. This Court finds such an expansive definition of subcontractor to be implausible and unworkable.

As explained above, the federal courts' interpretation of the Miller Act is more useful in resolving the parties' dispute. Under that common-sense approach, based on the "substantiality and importance" of Gerken's involvement in the project, the only reasonable conclusion is that Gerken

11

was a material supplier rather than a subcontractor. Therefore, the policy exclusion applies, and Travelers is not required to indemnify or defend Mosser in Port Clinton's lawsuit.

**Bad Faith Claim**

Mosser also brought a claim against Travelers for bad faith denial of coverage. Because this Court finds that Travelers does not have a duty to defend Mosser under the policy, Travelers did not act in bad faith and is entitled to summary judgment on that claim as well.

## CONCLUSION

The Court finds that the exception is unambiguous and that Gerken was not a subcontractor. The exclusion applies and the Travelers policy does not cover the backfill material supplied by Gerken. Plaintiff's Motion for Summary Judgment (Doc. No.19) is denied and Defendant's Motion for Summary Judgment (Doc. No. 18) is granted.

IT IS SO ORDERED.

      s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

October 26, 2009